Commonwealth *v.* Edwards.

## COMMONWEALTH *vs.* JERMAINE EDWARDS & others.[1]

Suffolk. March 8, 2005. - July 1, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Grand Jury. Practice, Criminal,* Grand jury proceedings, Confrontation of witnesses. *Evidence,* Grand jury proceedings, Unavailable witness. *Witness,* Unavailability. *Constitutional Law,* Confrontation of witnesses.

This court adopted the doctrine of forfeiture by wrongdoing [531-536], whereby a defendant forfeits, by virtue of wrongdoing, the right to object, on both confrontation and hearsay grounds, to the admission in evidence of an unavailable witness's out-of-court statements on findings that the witness is unavailable; that the defendant was involved in, or responsible for, procuring the unavailability of the witness; and that the defendant acted with the intent to procure the witness's unavailability [536-540]; moreover, this court concluded that the causal link necessary between a defendant's actions and a witness's unavailability may be established where a defendant puts forward to a witness the idea to avoid testifying, either by threats, coercion, persuasion, or pressure; where a defendant physically prevents a witness from testifying; or where, in collusion cases, a defendant actively facilitates the carrying out of the witness's independent intent not to testify, even if the collusion is carried out through lawful means [540-542]; further, the prosecution must prove by a preponderance of the evidence that the defendant procured the witness's unavailability [542-544], and prior to a determination of forfeiture, the parties should be given an opportunity to present evidence, including live testimony and hearsay, at an evidentiary hearing outside the jury's presence [544-545].

Given deficiencies in the record of a criminal trial, this court could neither accept nor reject the trial judge's findings of fact regarding whether a determination of forfeiture by wrongdoing was required against a criminal defendant, and therefore, this court remanded the matter to the Superior Court for an evidentiary hearing on the issue whether that defendant, by virtue of alleged collusion with another, forfeited his right to object, on both confrontation and hearsay grounds, to the substantive admission of that person's grand jury testimony [545-546]; however, because the Commonwealth had not even alleged facts sufficient to support a conclusion of forfeiture by two codefendants, this court declined to remand the case for further proceedings on that issue [547-548].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 18, 2004.

[1]Tyrone Brown and Eric Davis.

The case was reported by *Greaney*, J.

*Cory S. Flashner*, Assistant District Attorney (*Timothy M. Pomarole*, Assistant District Attorney, with him) for the Commonwealth.

*Gordon W. Spencer* for Jermaine Edwards.

*William A. Korman* for Eric Davis.

*Arnold P. Cohen* for Tyrone Brown.

The following submitted briefs for amici curiae:

*William M. Bennett*, District Attorney, *Jane Davidson Montori*, Assistant District Attorney, *& Katherine E. McMahon*, Assistant District Attorney, for District Attorney for the Hampden District & others.

*Carol A. Donovan*, Committee for Public Counsel Services, for Committee for Public Counsel Services.

Cowin, J. This case presents the issue whether and in what circumstances the grand jury testimony of an unavailable witness may be admitted substantively against defendants who, the Commonwealth claims, procured the unavailability of that witness.[2] Three defendants are alleged to have colluded with the Commonwealth's key witness, Jeremy Crockett, to ensure Crockett's unavailability for trial. In particular, the Commonwealth points to a series of telephone calls made by the defendant Jermaine Edwards to Crockett while Edwards was incarcerated at the Suffolk County house of correction at South Bay, and just prior to two scheduled trial dates, in which the two can be heard orchestrating Crockett's leaving the jurisdiction. Crockett ultimately did appear in court, but refused to testify. We follow Federal and State courts that have considered the issue and adopt the "forfeiture by wrongdoing" doctrine whereby a defendant is deemed to have lost the right to object (on both confrontation and hearsay grounds) to the admission of the out-of-court statements of a witness whose unavail-

---

[2]We acknowledge the amicus briefs of the Committee for Public Counsel Services and the district attorneys for the Berkshire, Bristol, Cape and Islands, Eastern (Essex), Hampden, Middle, Norfolk, Northern, Northwestern, and Plymouth Districts.

ability the defendant has played a meaningful role in procuring.[3] We conclude that this case must be remanded to the Superior Court for a determination whether, under the doctrine as we adopt it, Edwards forfeited his right to object on confrontation and hearsay grounds to the admission for substantive purposes of Crockett's grand jury testimony. As the Commonwealth has adduced no evidence to support its contention that the remaining two defendants were involved in the alleged procurement of Crockett's unavailability, we affirm the motion judge's denial of the Commonwealth's motion to introduce Crockett's testimony against those defendants.

*Background.* We summarize the facts and procedural history, but reserve for later discussion the details relevant to procuring the witness's unavailability. The parties have stipulated to the following facts, although the defendants make no admission as to their truth and reserve the right to contest them at trial. Because the procedural history plays an important role in our decision, we set it forth in some detail.

The charges against the defendants stem from the July 3, 2001, shooting of Yves Andre, a taxicab driver, in the Hyde Park section of Boston. The victim told Boston police officers that he had been shot by a young black male, approximately seventeen years of age, whom he had picked up in his taxicab along with two other young black males. As a result of the shooting, the victim is paralyzed from the waist down.

In September, 2001, a Suffolk County grand jury indicted Jermaine Edwards, Eric Davis, and Tyrone Brown in connection with the shooting. Edwards was charged with armed assault with intent to murder (G. L. c. 265, § 18 [*b*]); assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A);

---

[3]Some jurisdictions have used the term "waiver" or the phrase "waiver by misconduct" to describe essentially the same doctrine. See, e.g., *United States v. Thompson*, 286 F.3d 950, 963-964 (7th Cir. 2002), cert. denied, 537 U.S. 1134 (2003); *United States v. Carlson*, 547 F.2d 1346, 1360 (8th Cir. 1976), cert. denied sub nom. *Hofstad v. United States*, 431 U.S. 914 (1977); *State v. Valencia*, 186 Ariz. 493, 498 (Ct. App. 1996). The parties here have utilized "waiver" and "forfeiture," sometimes interchangeably, when describing the doctrine. We use the phrase "forfeiture by wrongdoing" to refer to the doctrine, and we explain our preference for that phrase below. See note 16, *infra*.

unlawful possession of a firearm (G. L. c. 269, § 10 [*a*]); unlawful possession of ammunition (G. L. c. 269, § 10 [*h*]); and perjury (G. L. c. 268, § 1). Eric Davis was charged with assault and battery by means of a dangerous weapon; suborning perjury (G. L. c. 268, § 3); perjury; and being an accessory after the fact (G. L. c. 274, § 4). Tyrone Brown was charged with assault and battery by means of a dangerous weapon; perjury; and accessory after the fact.[4]

Jeremy Crockett testified on three occasions before the grand jury (August, 2, 8, and 9, 2001), each time elaborating on and amending his earlier testimony concerning the events of July 3, 2001. The three defendants spent the night at Crockett's home on the evening of July 3, 2001, and Crockett testified about his conversations with, and observations of, the defendants on that date. His testimony incriminated all three. For example, Crockett testified that one of the defendants, on arriving at his home, told him, "Cabby dude just got shot," and that the defendants searched for a gun that Edwards had hidden on a pathway. Crockett was, and remains, the Commonwealth's key witness. Without his testimony, the Commonwealth acknowledges that it has insufficient evidence to pursue any of the nonperjury charges.

The trial was initially scheduled for June 10, 2003, and the Commonwealth expected that Crockett would testify against the defendants. The trial did not go forward on that date, and on June 21, 2003, Crockett first informed the prosecution that he did not want to testify and would prefer to serve a sentence for contempt of court. Crockett then failed to appear for several trial dates, including one scheduled for December 8, 2003. On December 12, 2003, Crockett was taken into custody by Boston police on a capias. Although granted immunity, after the appropriate hearing, Crockett persisted in his refusal to testify at the defendants' scheduled trial and, on April 12, 2004, was found in contempt of court in violation of G. L. c. 233, § 20H, and sentenced to 365 days in the house of correction.

The defendants' trial was eventually rescheduled for June, 2004. Prior to commencement of trial, the Commonwealth filed

---

[4]The charges of assault and battery by means of a dangerous weapon against Davis and Brown were dismissed.

a motion in limine to admit Crockett's grand jury testimony as substantive evidence on the ground that the defendants wrongfully procured his unavailability (refusal to testify) through collusion with the witness, and thus waived their confrontation rights under the Sixth Amendment to the United States Constitution.[5] Edwards filed a motion in limine to preclude the introduction of Crockett's grand jury testimony as substantive evidence on the grounds that the testimony was inadmissible hearsay, and that the Commonwealth presented no proof that Crockett's refusal to testify was "at the instruction of . . . or based upon fear of Mr. Edwards, or that his refusal was grounded in intimidation" or "coerc[ion]," rather than "the result of [Crockett's] own free will." Brown filed a motion in limine to prohibit the Commonwealth from introducing "any evidence at all that any of its witnesses, especially Jeremy Crockett, was either threatened or induced by a person [other than Brown] . . . not to testify in this matter."[6] In the alternative, Brown moved for severance from his codefendants. Davis has not filed a motion in limine on this issue.

A Superior Court judge held a hearing on the motions in limine at which no testimony was presented and no exhibits were marked as evidence. As its primary indication of collusion, the Commonwealth relied on its representation of the contents of several recorded telephone conversations, initiated by Edwards while he was incarcerated and made just prior to two scheduled trial dates (those on June 10, 2003, and December 8, 2003), in which Edwards allegedly conspired with Crockett and others to procure Crockett's unavailability for trial.[7] The Commonwealth offered to play the recordings for the judge, but

---

[5]The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Sixth Amendment protection is applicable to State prosecutions. See *Crawford* v. *Washington*, 541 U.S. 36, 42 (2004), citing *Pointer* v. *Texas*, 380 U.S. 400, 406 (1965).

[6]This motion was filed in contemplation that the evidence of Edwards's alleged efforts to procure Crockett's unavailability would be offered as consciousness of guilt evidence.

[7]We have reviewed recordings of thirteen telephone calls made by Edwards while incarcerated at the Suffolk County house of correction at South Bay. Because there were restrictions on the number of people Edwards could

he declined the offer. Relying on the Commonwealth's proffer,[8] and issuing his findings and rulings from the bench, the judge denied the Commonwealth's motion to admit Crockett's grand jury testimony as substantive evidence against any of the defendants. The judge allowed Edwards's motion to preclude the admission of the testimony and Brown's motion to prohibit the introduction of evidence of threats or inducements.[9] He apparently did accept the premise that a defendant who procures a witness's unavailability cannot object on confrontation or hearsay grounds to the admission of the out-of-court statements of that witness. To trigger such forfeiture, he stated, however, that the Commonwealth must "show that the defendant[s] participated in [Crockett's] absence in a significant way." The judge found that the telephone conversations "at best show that [Crockett] on his own had decided that he wasn't going to testify," and that "there's no showing that any of the defendants participated in encouraging or threatening with regard to [Crockett's] refusal to testify."

The Commonwealth petitioned a single justice of this court seeking relief under G. L. c. 211, § 3, from the judge's order denying its motion, or in the alternative leave to appeal under Mass. R. Crim. P. 15, as appearing in 422 Mass. 1501 (1996). The Commonwealth also requested a stay of the trial proceedings pending review. The single justice ordered the trial stayed and reserved and reported the matter to the full bench.

*Discussion.* The defendants assert that the judge properly denied the Commonwealth's motion to admit Crockett's grand

telephone while incarcerated, Edwards utilized his stepsister and others to place third-party telephone calls to Crockett and other individuals.

[8]The Commonwealth, in its proffer, also referred to specific portions of Crockett's grand jury testimony and Crockett's visit with Edwards while the latter was incarcerated. The record includes relevant portions of the grand jury testimony as well as documentary evidence of the visit. The record does not indicate whether this documentary evidence was submitted to the judge.

[9]Although the judge denied the Commonwealth's motion to admit Crockett's grand jury testimony on the theory that the defendants procured the witness's unavailability, the judge did not rule on whether that testimony might be introduced under some other exception to the hearsay rule, leaving that determination for the later stages of trial. Likewise, he did not consider Brown's motion to sever.

jury testimony for substantive purposes because it consists of inadmissible hearsay and its use at trial would violate the defendants' confrontation rights. Without question, Crockett's grand jury testimony consists of hearsay, see *Commonwealth* v. *Silanskas*, 433 Mass. 678, 693 (2001), and we shall assume it is not admissible under any exception to the hearsay rule.[10] See *Commonwealth* v. *Rice*, 441 Mass. 291, 305 (2004) (to be admissible, hearsay generally must fall within exception to hearsay rule). The confrontation clauses of our Federal and State Constitutions pose another potential obstacle to the admission of Crockett's grand jury testimony. Under the Sixth Amendment and art. 12 of the Massachusetts Declaration of Rights, a defendant has the right to confront the witnesses against him. The United States Supreme Court, in *Crawford* v. *Washington*, 541 U.S. 36 (2004), held that, with respect to testimonial evidence such as the grand jury testimony at issue here, the confrontation clause requires both "unavailability and a prior opportunity for cross-examination." *Id.* at 68. The defendants here have had no prior opportunity to cross-examine Crockett.

Notwithstanding these potential barriers to its admission, the Commonwealth urges this court to admit the testimony by adopting the doctrine of "forfeiture by wrongdoing." Whether to adopt the "forfeiture by wrongdoing" doctrine is a question of law, which we review de novo. See, e.g., *State* v. *Hallum*, 606 N.W.2d 351, 354 (Iowa 2000). See also *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 543, cert. denied, 537 U.S. 942 (2002) (adequacy of Miranda warnings is question of law reviewed de novo); *Commonwealth* v. *Miller*, 366 Mass. 387, 389 (1974) (independently reviewing judge's conclusion of law). Noting the broad embrace of the doctrine by Federal and State courts nationwide, and recognizing the compelling public policy interests behind its enactment, we adopt the doctrine in

---

[10]While the Commonwealth argued in its supplemental motion to admit Crockett's grand jury testimony that it fell within exceptions to the hearsay rule, the judge declined to rule on that issue "in advance," and the Commonwealth does not assert before us that the testimony is admissible under any hearsay exception. Therefore, we do not treat the issue of other potentially applicable hearsay exceptions.

the Commonwealth. We then consider its proper scope. Finally, we endeavor to review the motion judge's findings and rulings.[11]

1. *Adopting the doctrine of "forfeiture by wrongdoing."* The United States Supreme Court first applied the doctrine of "forfeiture" or "waiver" by wrongdoing in *Reynolds* v. *United States*, 98 U.S. 145, 158 (1878):

> "The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. . . . [I]f [a defendant] voluntarily keeps the witnesses away, he cannot insist on his [Sixth Amendment] privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated."

The Supreme Court has recently affirmed the doctrine's validity in *Crawford* v. *Washington, supra* at 62 ("the rule of forfeiture by wrongdoing [which we accept] extinguishes confrontation claims on essentially equitable grounds"). Beginning in the 1970's, several United States Courts of Appeals followed the *Reynolds* lead and adopted the forfeiture doctrine. See, e.g., *United States* v. *Rouco*, 765 F.2d 983, 995 (11th Cir. 1985), cert. denied, 475 U.S. 1124 (1986); *United States* v. *Potamitis*, 739 F.2d 784, 788 (2d Cir.), cert. denied sub nom. *Argitakos* v. *United States*, 469 U.S. 918, and cert. denied, 469 U.S. 934 (1984); *Steele* v. *Taylor*, 684 F.2d 1193, 1201 (6th Cir. 1982), cert. denied, 460 U.S. 1053 (1983); *United States* v. *Thevis*, 665 F.2d 616, 630 (5th Cir.), cert. denied sub nom. *Evans* v. *United States*, 456 U.S. 1008, cert. denied sub nom. *Hood* v. *United States*, 458 U.S. 1109, and cert. denied, 459 U.S. 825 (1982); *United States* v. *Balano*, 618 F.2d 624, 629 (10th Cir. 1979), cert. denied, 449 U.S. 840 (1980); *United States* v. *Carlson*, 547 F.2d 1346 (8th Cir. 1976), cert. denied sub nom. *Hofstad* v.

---

[11]Edwards posited at oral argument that the issue whether to adopt the doctrine of forfeiture by wrongdoing is not properly before this court on the facts of this case. We disagree. The motion judge based his rulings on some version of the doctrine, and the facts alleged by the Commonwealth, if proved by a preponderance of the evidence, are sufficient to support a finding of forfeiture by wrongdoing as we construe that doctrine. See *infra.* Thus review of this case warrants our consideration of this important legal question.

*United States*, 431 U.S. 914 (1977). In 1997, the forfeiture by wrongdoing rule was codified in the Federal Rules of Evidence as an exception to the hearsay rule. See Fed. R. Evid. 804 (b) (6).[12] Some version of the doctrine has likewise been adopted in at least fourteen States and the District of Columbia.[13] Several other State courts, while not having applied the doctrine in any case, have recognized its legitimacy.[14] While States vary with respect to the scope of the doctrine,[15] we are aware of no jurisdiction that, after considering the doctrine, has rejected it.

In addition to the widespread support it enjoys, the forfeiture rule furthers important public and jurisprudential interests. "The rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong . . . ." *Reynolds* v. *United States, supra* at 159. See *Crawford* v. *Washington, supra* at 62 (recognizing "forfeiture by wrongdoing" doctrine based

_____

[12]Rule 804 (b) (6) of the Federal Rules of Evidence reads:

"Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . Forfeiture by Wrongdoing. A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."

[13]See *State* v. *Valencia*, 186 Ariz. 493, 498 (Ct. App. 1996); People *vs.* Moore, No. 01CA 1760 (Colo. Ct. App. July 29, 2004); *State* v. *Henry*, 76 Conn. App. 515, 535 (2003); *Devonshire* v. *United States*, 691 A.2d 165, 168-169 (D.C.), cert. denied sub nom. *Vines* v. *United States*, 520 U.S. 1247 (1997); *State* v. *Hallum*, 606 N.W.2d 351, 356-359 (Iowa 2000); *State* v. *Meeks*, 277 Kan. 609, 614-615 (2004); *State* v. *Fields*, 679 N.W.2d 341, 347 (Minn. 2004); *State* v. *Sheppard*, 197 N.J. Super. 411, 436 (1984); *State* v. *Alvarez-Lopez*, 98 P.3d 699 (N.M. 2004), cert. denied, 543 U.S. 1177 (2005); *People* v. *Geraci*, 85 N.Y.2d 359, 366 (1995); State *vs.* Boyes, Nos. 2003-CA-0050, 2003-CA-0051 (Ohio Ct. App. June 21, 2004); *Commonwealth* v. *Paddy*, 569 Pa. 47, 73 (2002); State *vs.* Hinson, No. M2000-02762-CCA-R3-CD (Tenn. Crim. App. Sept. 27, 2002); *Gonzalez* v. *State*, 155 S.W.3d 603, 610-611 (Tex. Crim. App. 2004); Commonwealth *vs.* Salaam, No. CR03-4625 (Va. Cir. Ct. Aug. 25, 2004).

[14]See *Wildermuth* v. *State*, 310 Md. 496, 514 n.10 (1987); *State* v. *Warford*, 223 Neb. 368, 375 (1986); *State* v. *Page*, 197 Or. App. 72, 80 (2005); *State* v. *Carroll*, 147 Vt. 108, 113 (1986); *State* v. *Hale*, 277 Wis. 2d 593, 622 (2005) (Prosser, J., concurring).

[15]Most notably, States disagree as to what constitutes "wrongdoing" or "misconduct" sufficient to trigger the doctrine's application, and vary as to whether an evidentiary hearing is necessary prior to a finding of forfeiture. We discuss both issues below.

on "essentially equitable grounds"); *United States* v. *Carlson, supra* at 1359 ("The Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery"); *United States* v. *Houlihan,* 92 F.3d 1271, 1282-1283 (1st Cir. 1996), cert. denied, 519 U.S. 1118 (1997) (doctrine "ensure[s] that a wrongdoer does not profit in a court of law by reason of his miscreancy"). "The rule . . . is [also] based on a public policy protecting the integrity of the adversary process by deterring litigants from acting on strong incentives to prevent the testimony of an adverse witness." *Steele* v. *Taylor, supra* at 1202. Additionally, the doctrine furthers the truth-seeking function of the adversary process, allowing fact finders access to valuable evidence no longer available through live testimony. See *Alberts* v. *Devine,* 395 Mass. 59, 67, cert. denied sub nom. *Carroll* v. *Alberts,* 474 U.S. 1013 (1985) ("society is entitled to every person's evidence in order that the truth may be discovered"). Moreover, by discouraging untoward behavior toward witnesses by defendants, it serves to protect witnesses from intimidation, pressure, threats, and even physical harm.

The forfeiture by wrongdoing doctrine is also consistent with Massachusetts law. We have already recognized that the right to cross-examine adverse witnesses under art. 12 is not absolute, see, e.g., *Commonwealth* v. *Amirault,* 424 Mass. 618, 633 (1997), and may be lost by misconduct. See, e.g., *Commonwealth* v. *Flemmi,* 360 Mass. 693, 694 (1971), quoting *Illinois* v. *Allen,* 397 U.S. 337, 342-343 (1970). Moreover, we have long recognized in other contexts the equitable principle, at the heart of the forfeiture by wrongdoing doctrine, that a party may not gain advantage from his own wrong. See, e.g., *Phillips* v. *Chase,* 203 Mass. 556, 565 (1909) ("The law will not allow a man to profit by his own wrongdoing"); *Everett* v. *Henderson,* 146 Mass. 89, 97 (1888), *S.C.,* 150 Mass. 411 (1890) (noting "numerous cases in which it is held that one shall not be permitted to take advantage of his own wrong"). Also instructive, we have applied the "curative admissibility doctrine," where a party is estopped from objecting to hearsay admitted to rebut incompetent evidence where the original evidence (offered by the objecting party) created significant prejudice. *Commonwealth* v. *Ruffen,* 399 Mass. 811, 813-814 (1987).

Despite the abundant support for its adoption, Davis urges us not to recognize the forfeiture by wrongdoing doctrine, claiming that art. 12 extends greater protections than the Sixth Amendment. Davis points to *Commonwealth* v. *Amirault, supra* at 631, and *Commonwealth* v. *Bergstrom,* 402 Mass. 534, 541-542 (1988), for this proposition. While both cases recognize potentially broader protections under art. 12 than the Sixth Amendment, those cases "involved the physical configuration of the courtroom and the defendant's ability literally 'to meet' testifying witnesses 'face to face' as required by the plain language of art. 12" (citations omitted). *Commonwealth* v. *Whelton,* 428 Mass. 24, 28 (1998). "In cases involving the hearsay rule and its exceptions, we have stated that art. 12 provides no greater protection than the Sixth Amendment." *Id.* In the context of the present controversy, art. 12 should be viewed coextensively with the Sixth Amendment.

Given the overwhelming precedential and policy support for its adoption, we recognize the "forfeiture by wrongdoing" doctrine in the Commonwealth.[16]

2. *Scope of the doctrine.* a. *Edwards's conduct.* The doctrine of forfeiture by wrongdoing, based on equitable considerations, contemplates some wrongful act on the part of the defendant. See *Reynolds* v. *United States, supra* at 159 (because rule is based on "maxim that no one shall be permitted to take advantage of his own wrong . . . if there has not been, in legal contemplation, a wrong committed, the way has not been opened for the introduction of the testimony"). The Commonwealth argues that "collusion" with a witness to procure the witness's unavailability constitutes a wrongdoing. In particular, the Commonwealth claims that a joint plan between a defendant and a

---

[16]We adopt the doctrine as one involving "forfeiture" rather than "waiver" because the phrase "forfeiture by wrongdoing" better reflects the legal principles that underpin the doctrine. See *Steele* v. *Taylor,* 684 F.2d 1193, 1201 n.8 (6th Cir. 1982), cert. denied, 460 U.S. 1053 (1983); *State* v. *Hallum,* 606 N.W.2d 351, 355 (Iowa 2000) ("the loss of a defendant's right to object is based on a forfeiture theory because the loss rests on the defendant's misconduct, not on the defendant's intentional relinquishment of a known right[, i.e., waiver]"); *People* v. *Geraci,* 85 N.Y.2d 359, 366 (1995). See also *Freytag* v. *Commissioner of Internal Revenue,* 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring in part) (recognizing distinction between "waiver" and "forfeiture").

witness to remove the witness from the jurisdiction in order to avoid testimony is sufficient to trigger forfeiture. Edwards, on the other hand, contends that there is no support in the case law of other jurisdictions for the proposition that "collusion" — i.e., an agreement or conspiracy — is a wrongdoing.

Without question, the doctrine should apply in cases where a defendant murders,[17] threatens,[18] or intimidates[19] a witness in an effort to procure that witness's unavailability. Similarly, forfeiture will be triggered where a defendant commits a criminal act, such as a violation of our witness tampering statute, G. L. c. 268, § 13B,[20] in order to procure the witness's unavailability. While no court has expressly applied the doctrine to "collusion," no court has rejected such a broad application either. See *United States* v. *Ochoa*, 229 F.3d 631, 639 n.3 (7th Cir. 2000) (not reaching issue whether "knowingly aiding a witness in becoming unavailable" is enough to waive confrontation rights under Fed. R. Evid. 804 [b] [6], but noting that "no case has refused to apply the [r]ule to such circumstances" and that criminal conduct is not required for forfeiture).

The doctrine has been applied to a wider range of actions by defendants that have contributed to witness unavailability, including those that, while not expressly labeled as such, may be considered "collusion." For example, the Supreme Court, in

---

[17]See, e.g., *United States* v. *Dhinsa*, 243 F.3d 635, 650-651 (2d Cir.), cert. denied, 534 U.S. 897 (2001); *United States* v. *White*, 116 F.3d 903, 911 (D.C. Cir.), cert. denied, 522 U.S. 960 (1997); *United States* v. *Mastrangelo*, 693 F.2d 269, 271 (2d Cir. 1982); *United States* v. *Thevis*, 665 F.2d 616, 630 (5th Cir.), cert. denied sub nom. *Evans* v. *United States*, 456 U.S. 1008, cert. denied sub nom. *Hood* v. *United States*, 458 U.S. 1109, and cert. denied, 459 U.S. 825 (1982); *Devonshire* v. *United States*, 691 A.2d 165, 166 (D.C. 1997).

[18]See, e.g., *United States* v. *Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992); *United States* v. *Potamitis*, 739 F.2d 784, 788 (2d Cir.), cert. denied sub nom. *Argitakos* v. *United States*, 469 U.S. 918, and cert. denied, 469 U.S. 934 (1984); *United States* v. *Balano*, 618 F.2d 624, 628-629 (10th Cir. 1979), cert. denied, 449 U.S. 840 (1980); *United States* v. *Carlson*, 547 F.2d 1346, 1353 (8th Cir. 1976).

[19]See *United States* v. *Carlson*, *supra* at 1358; *People* v. *Geraci*, *supra* at 370.

[20]General Laws c. 268, § 13B, imposes criminal punishment on anyone who, "directly or indirectly, willfully endeavors by means of a gift, offer or promise of anything of value or by misrepresentation, intimidation, force or express or implied threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness."

*Reynolds* v. *United States, supra* at 159-160, applied the doctrine where a defendant refused to reveal the location of his wife, a witness, to the authorities so that she could be served with a subpoena. The Court inferred that the defendant had been "instrumental in concealing or keeping the witness away" from his refusal to disclose her location and the fact that the defendant did not otherwise account for his wife's absence. *Id.* at 160. The Court cited no evidence of intimidation, bribery, threats, criminal activity, or harm to the wife. Also instructive, the Supreme Court of Iowa, in *State* v. *Hallum*, 606 N.W.2d 351 (Iowa 2000), applied the doctrine where a defendant wrote letters encouraging the witness, his half-brother, to "hang in there" and telling him not to discuss the case over the telephones. *Id.* at 356-357. The court found that the defendant had procured his brother's unavailability "by encouraging and influencing" him not to testify. *Id.* at 358. The *Hallum* court stated:

> "The broad scope of conduct that may give rise to a forfeiture is consistent with the philosophy underlying the forfeiture rule: . . . '[T]he disclosure of relevant information at a public trial is a paramount interest, and any significant interference with that interest, other than by exercising a legal right to object at the trial itself, is a wrongful act.' . . . Thus, it is the fact that a defendant's conduct interferes with the interest in having witnesses testify at a public trial that makes the defendant's conduct wrongful."

*Id.* at 356, quoting *Steele* v. *Taylor*, 684 F.2d 1193, 1201 (6th Cir. 1982).

As quoted above, the United States Court of Appeals for the Sixth Circuit, in *Steele* v. *Taylor, supra*, defined a "wrongful act" as "any significant interference" with the interest in "the disclosure of relevant information at a public trial." In that case, the witness was living with one of the coconspirators, had a child with him, and her lawyer was paid by him. The court determined that the coconspirator had exerted "influence and control" over the witness and "induce[d] her not to testify." *Id.* at 1198, 1203. Finally, in *People* v. *Pappalardo*, 152 Misc. 2d 364, 369 (N.Y. 1991), the court found a waiver based on a "joint plan" to prevent

the witness's testimony. The court found that "the defendant and this witness were involved in planning and preparing strategies to enable [the witness] to avoid testifying," and that the "defendant was and is extensively involved" in the witness's refusal to testify. *Id.* at 371. The court crafted a broad test for the doctrine, holding that a defendant waives confrontation and hearsay objections by wrongdoing if "the defendant is involved in this unlawful refusal to testify through 'knowledge, complicity, planning or in any other way.' " *Id.* at 366, quoting *Holtzman* v. *Hellenbrand*, 92 A.D.2d 405, 414 (N.Y. 1982).

Other courts, while not yet applying the forfeiture doctrine to cases involving a defendant's collusion with a witness to plan the witness's unavailability, have articulated very broad tests for the doctrine's application that, by their terms, would appear to include such collusion. For example, the United States Court of Appeals for the Second Circuit required the prosecution to show "(1) the defendant . . . was involved in, or responsible for, procuring the unavailability of the declarant 'through knowledge, complicity, planning or in any other way,' . . . ; and (2) the defendant . . . acted with the intent of procuring the declarant's unavailability as an actual or potential witness." *United States* v. *Dhinsa*, 243 F.3d 635, 653-654 (2d Cir.), cert. denied, 534 U.S. 897 (2001), quoting *United States* v. *Miller*, 116 F.3d 641, 668 (2d Cir. 1997), cert. denied, 524 U.S. 905 (1998). See *People* v. *Pappalardo, supra.* See also *United States* v. *Cherry*, 217 F.3d 811, 820 (10th Cir. 2000) (defendant waives confrontation and hearsay objections where, in part, "he or she participated directly in planning or procuring the declarant's unavailability through wrongdoing").

The public policy interests underlying the doctrine are best served by applying the doctrine to cases in which a defendant colludes with a witness to procure that witness's unavailability. A defendant should no more be able to benefit from wrongful collusion with a witness than from threats or worse. Moreover, direct evidence of witness intimidation is rare. What may appear as an "agreement" by a witness not to testify, or a witness's independent "decision" to avoid testifying, in fact may be a product of coercion, pressure, or threats. Thus, evidence that a witness agreed to a plan to ensure the witness's unavailability

(i.e., there was "collusion" rather than "coercion") should not shield a defendant from that witness's testimony where the defendant was involved in the plan.

We hold that a defendant forfeits, by virtue of wrongdoing, the right to object to the admission of an unavailable witness's out-of-court statements on both confrontation and hearsay grounds on findings that (1) the witness is unavailable; (2) the defendant was involved in, or responsible for, procuring the unavailability of the witness; and (3) the defendant acted with the intent to procure the witness's unavailability. A defendant's involvement in procuring a witness's unavailability need not consist of a criminal act, and may include a defendant's collusion with a witness to ensure that the witness will not be heard at trial.[21,22]

While this test should be sufficient in most instances to resolve the issue whether a defendant procured the unavailability of a witness, the facts of the instant cases, complicated as they are, convince us of the need to provide some additional guidance regarding the scope of the forfeiture by wrongdoing doctrine, particularly as it applies to collusion. A finding that a defendant somehow influenced a witness's decision not to testify

---

[21] There may be some statements so lacking in reliability that their admission would raise due process concerns. See *United States* v. *Aguiar*, 975 F.2d 45, 47 (2d Cir. 1992) (although finding no due process violation in case at hand, recognizing admission of facially unreliable hearsay may raise due process concerns in some cases); *Devonshire* v. *United States*, 691 A.2d 165, 169 n.6 (D.C. 1997) (same); *State* v. *Hallum*, *supra* at 359 n.6 (after finding evidence admissible under forfeiture doctrine, conducting due process analysis and finding no violation even though due process not raised by defendant). We do not address this issue today. The grand jury testimony here, taken under oath, presents no due process problem.

[22] Most jurisdictions that have adopted the doctrine have held that a defendant forfeits objections under both the rule against hearsay and the confrontation clause. Compare, e.g., *United States* v. *Carlson*, 547 F.2d 1346, 1353-1355, 1359-1360 (8th Cir. 1976) (defendant waived confrontation rights only), with *United States* v. *Mastrangelo*, 693 F.2d 269, 272 (2d Cir. 1982) (defendant waived confrontation and hearsay objections by his wrongdoing). "Because both the hearsay rule and the confrontation clause are designed to protect against the dangers of using out-of-court declarations as proof, a defendant's actions that make it necessary for the government to resort to such proof should be construed as a forfeiture of the protections afforded under both." *United States* v. *White*, 116 F.3d 903, 912 (D.C. Cir. 1997) (noting more common trend is loss of confrontation rights and hearsay objections).

is not required to trigger the application of the forfeiture by wrongdoing doctrine where there is collusion in implementing that decision or planning for its implementation. Certainly, a defendant must have contributed to the witness's unavailability in some significant manner. However, the causal link necessary between a defendant's actions and a witness's unavailability may be established where (1) a defendant puts forward to a witness the idea to avoid testifying, either by threats, coercion, persuasion, or pressure[23]; (2) a defendant physically prevents a witness from testifying; or (3) a defendant actively facilitates the carrying out of the witness's independent intent not to testify. Therefore, in collusion cases (the third category above) a defendant's joint effort with a witness to secure the latter's unavailability, regardless of whether the witness already decided "on his own" not to testify, may be sufficient to support a finding of forfeiture by wrongdoing.

Furthermore, that a defendant and a witness are ultimately unable to carry out their plan to engineer the witness's unavailability through the precise method intended does not necessarily preclude a finding of forfeiture in collusion cases. Where a defendant's goal in colluding with a witness is to deprive the Commonwealth of valuable testimony, the defendant may be no less successful where the desired result is achieved by means other than those originally contemplated (such as a witness's refusal to testify). As noted above, there must be some causal connection between the defendant's actions and the witness's ultimate unavailability. The method by which the witness becomes unavailable must, at the very least, be a logical outgrowth or foreseeable result of the collusion. Thus, where the defendant has had a meaningful impact on the witness's unavailability, the defendant may have forfeited confrontation and hearsay objections to the witness's out-of-court statements, even where the witness modified the initial strategy to procure the witness's silence.

Finally, a defendant's intentional procurement of a witness's

---

[23]We do not suggest that merely informing a witness of the right to remain silent, guaranteed by the Fifth Amendment to the United States Constitution, will be sufficient to constitute forfeiture. Providing such publicly available information to a witness does not constitute "pressure" or "persuasion."

unavailability through collusion will constitute a per se wrongdoing sufficient to trigger the doctrine, even if the collusion is carried out through lawful means. As an initial matter, collusion with a witness implies some degree of improper or untoward interference with official process. More importantly, any action on the part of a defendant that satisfies all elements of the doctrine as set forth above will most certainly be sufficiently "wrongful" to justify forfeiture. "[I]t is the fact that a defendant's conduct interferes with the interest in having witnesses testify at a public trial that makes a defendant's conduct wrongful[;] the nature of the defendant's conduct is not as important as the effect of that conduct on the witness's willingness to testify." *State* v. *Hallum*, 606 N.W.2d 351, 356 (Iowa 2000).

Edwards points to the case of *United States* v. *Scott*, 284 F.3d 758, 763-764 (7th Cir.), cert. denied, 537 U.S. 1031 (2002), in support of his argument that a defendant must commit a wrongdoing independent of the procurement of the witness's unavailability to fall within the doctrine's reach. However, the *Scott* court, in requiring an independent wrongdoing, was interpreting Fed. R. Evid. 804 (b) (6), which expressly requires that a party have "engaged or acquiesced *in wrongdoing* that was intended to, and did, procure the unavailability of the declarant" (emphasis added). *United States* v. *Scott*, 284 F.3d at 762. Even if the *Scott* court is correct in its interpretation of the Federal rule, a matter we need not visit, we are not bound by that interpretation. The forfeiture by wrongdoing doctrine, as we have articulated it above, contains no independent "wrongdoing" requirement.

b. *Standard of proof.* We now determine the standard required to prove forfeiture under the doctrine articulated above. We, like virtually all of the jurisdictions that have considered the issue, hold that the prosecution must prove by a preponderance of the evidence that the defendant procured the witness's unavailability. A majority of United States Courts of Appeals have applied the preponderance standard,[24] and Fed. R. Evid. 804 (b) (6) adopts that standard. See advisory committee note

---

[24]See, e.g., *United States* v. *Scott*, 284 F.3d 758, 762 (7th Cir.), cert. denied, 537 U.S. 1031 (2002); *United States* v. *Zlatogur*, 271 F.3d 1025, 1028 (11th Cir. 2001), cert. denied, 535 U.S. 946 (2002); *United States* v. *Cherry*, 217

Commonwealth *v*. Edwards.

to Fed. R. Evid. 804 (b) (6). A majority of those States that have ruled on the standard of proof have similarly applied the preponderance standard.[25] The preponderance standard is also consistent with our own case law. While the Commonwealth must prove all the essential elements of a crime beyond a reasonable doubt, see *In re Winship*, 397 U.S. 358, 364 (1970), preliminary questions of fact and subsidiary facts need only be proved by a preponderance of the evidence. See *Commonwealth v. Rosenthal*, 432 Mass. 124, 127 n.4 (2000). Moreover, the admission of statements through the forfeiture by wrongdoing doctrine is functionally equivalent to the rule regarding the admission of coconspirator and joint venturer statements. We admit for substantive purposes certain out-of-court statements made by one joint venturer or coconspirator against another on a showing by a preponderance of the evidence that there existed a joint venture or coconspiracy between them.[26] See *Commonwealth v. McLaughlin*, 431 Mass. 241, 246 (2000) (applying preponderance standard to coconspirator statements); *Commonwealth v. Cruz*, 430 Mass. 838, 844 (2000) (applying preponderance standard to joint venturer statements).[27]

The defendants cite the cases of *United States v. Smith*, 792

F.3d 811, 820 (10th Cir. 2000); *United States v. Emery*, 186 F.3d 921, 927 (8th Cir. 1999), cert. denied, 528 U.S. 1130 (2000); *United States v. White*, 116 F.3d 903, 912 (D.C. Cir. 1997); *United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996), cert. denied, 519 U.S. 1118 (1997); *United States v. Mastrangelo*, 693 F.2d 269, 273-274 (2d Cir. 1982); *Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir. 1982).

[25]See, e.g., *State v. Valencia*, 186 Ariz. 493, 498 (Ct. App. 1996); *Devonshire v. United States, supra* at 169; *State v. Hallum, supra* at 355-356; *State v. Meeks*, 277 Kan. 609, 615 (2004); *State v. Sheppard*, 197 N.J. Super. 411, 441 (1984); *State v. Alvarez-Lopez*, 98 P.3d 699, 704 (N.M. 2004); State *vs.* Boyes, Nos. 2003-CA-0050, 2003-CA-0051 (Ohio Ct. App. June 21, 2004).

[26]Other courts have recognized this functional equivalency. See, e.g., *United States v. White, supra* at 912; *United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996); *Steele v. Taylor, supra* at 1203.

[27]Edwards argues that the clear and convincing standard is more appropriate because the United States Supreme Court has applied that standard in the past to a question of admissibility involving constitutional requirements concerning the reliability of evidence. See *United States v. Wade*, 388 U.S. 218, 240 (1967) (circumstances surrounding lineup identification). We believe the better analogy is to the admission of coconspirator and joint venturer statements.

F.2d 441 (4th Cir. 1986), cert. denied sub nom. *Eury* v. *United States*, 479 U.S. 1037 (1987); *United States* v. *Mastrangelo, supra*; *United States* v. *Thevis*, 665 F.2d 616, 631 (5th Cir. 1982); *United States* v. *Houlihan*, 887 F. Supp. 352, 360 (D. Mass. 1995); and *People* v. *Geraci*, 85 N.Y.2d 359, 367 (1995), in support of the "clear and convincing" standard. Two of these cases have been superseded in their endorsement of the clear and convincing standard. See *United States* v. *Zlatogur*, 271 F.3d 1025, 1028 (11th Cir. 2001), cert. denied, 535 U.S. 946 (2002) (rejecting *Thevis* standard because Fed. R. Evid. 804 [b] [6] adopted preponderance standard subsequent to *Thevis* decision); *United States* v. *Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996) (adopting preponderance standard). Contrary to the defendants' contentions, two of the remaining cases do not adopt the clear and convincing standard. See *United States* v. *Smith, supra* at 442 (not deciding standard required); *United States* v. *Mastrangelo, supra* at 273-274 (advocating preponderance standard). Only the *Geraci* case can be relied on for support of the clear and convincing standard. The court justified the imposition of the higher burden of proof mainly on what it viewed as the "great[er] degree of accuracy" it provides. *People* v. *Geraci, supra* at 368. We decline to follow New York's conclusion because "a higher standard of proof under the forfeiture doctrine would not actually separate out the more from the less reliable hearsay and admit only the former (it would simply reduce the scope of the doctrine's application)." *United States* v. *White*, 116 F.3d 903, 912 (D.C. Cir.), cert. denied, 522 U.S. 960 (1997). Furthermore, the higher burden of proof "might encourage behavior which strikes at the heart of the system of justice itself." *United States* v. *Mastrangelo, supra* at 273. See *Devonshire* v. *United States*, 691 A.2d 165, 169 (D.C.), cert. denied sub nom. *Vines* v. *United States*, 520 U.S. 1247 (1997).

c. *Evidentiary hearing.* Jurisdictions differ on whether a judge must hold an evidentiary hearing prior to making a determination that a defendant has forfeited the right to object to the introduction of the out-of-court statements of an unavailable

witness.[28] We are of the view that, prior to a determination of forfeiture, the parties should be given an opportunity to present evidence, including live testimony, at an evidentiary hearing outside the jury's presence. We note that the hearing is not intended to be a mini-trial, and accordingly, hearsay evidence, including the unavailable witness's out-of-court statements, may be considered. See *United States* v. *Mastrangelo, supra* at 273 (requiring evidentiary hearing prior to waiver determination in which exclusionary rules, other than privileges, do not apply). Cf. *Commonwealth* v. *Fletcher*, 52 Mass. App. Ct. 166, 168 n.2 (2001) (hearsay may be considered at suppression hearing).

3. *Application of doctrine to Edwards.* The Commonwealth has alleged conduct (collusion) that, as a matter of law, could be sufficient to support a finding of forfeiture by wrongdoing against Edwards. We now consider whether, applying the facts of this case to the forfeiture by wrongdoing doctrine as we have articulated it above, the judge was correct in concluding that Edwards, by virtue of his alleged collusion with Crockett, did not forfeit his right to object to the introduction for substantive purposes of the grand jury testimony. A judge's findings of fact are generally accorded deference, and we review them for clear error. See, e.g., *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 543 (2002), citing *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995) (on review of motion to suppress, "we do not disturb the judge's findings of fact unless they are clearly erroneous"). In the instant case, however, the judge and the parties were operating without any guidance regarding whether or to what extent this court would adopt the forfeiture by wrongdoing doctrine. It is not surprising, therefore, that the judge's findings provide an insufficient basis for appellate review of his denial of the Commonwealth's motion to admit Crockett's testimony

---

[28]Compare *United States* v. *Dhinsa*, 243 F.3d 635, 653 (2d Cir. 2001) (requiring evidentiary hearing outside presence of jury); *United States* v. *Balano*, 618 F.2d 624, 629 (10th Cir. 1979) (same); and *State* v. *Henry*, 76 Conn. App. 515, 535 (2003) (same), with *United States* v. *Emery, supra* at 926 (no need for preliminary hearing outside presence of jury; court may admit evidence to jury contingent on sufficient proof); and *Devonshire* v. *United States, supra* at 169 (finding no error where judge ruled on admissibility based on government's proffer, but declining to hold that proffer alone *is* sufficient).

against Edwards. As noted above, the judge appeared to adopt the doctrine of forfeiture by wrongdoing. Lacking appellate guidance, however, he did not identify with precision the test he applied to determine whether there was to be forfeiture in this case. He required proof that "the defendant participated in [Crockett's] absence in a significant way," but it is unclear whether he accepted collusion as a possible basis for forfeiture. Moreover, we cannot discern the standard of proof against which the judge weighed the proffered evidence. A further difficulty is that the judge did not conduct an evidentiary hearing.[29] Finally, the judge declined the Commonwealth's offer to play portions of the recorded telephone conversations during the hearing, accepting for the purpose of the motion the Commonwealth's representations as to their content.[30] Having listened to the recordings in full, we are of the opinion that they provide significant additional insight and evidence relevant to the application of the forfeiture by wrongdoing doctrine to these cases, and that their full import cannot be gleaned from the Commonwealth's summary of those calls.

Given these deficiencies in the record, we can neither accept nor reject the judge's findings of fact with respect to Edwards. We cannot determine whether those findings are supported by the record or whether, instead, a determination of forfeiture by wrongdoing is required against Edwards. Now that we have adopted the forfeiture by wrongdoing doctrine and clarified its scope, including the procedural requirement that a ruling on forfeiture be preceded by an evidentiary hearing, this case must be remanded to the Superior Court for an evidentiary hearing on the issue whether defendant Edwards, by virtue of his alleged collusion with Crockett, forfeited his right to object to the substantive admission of Crockett's grand jury testimony on both confrontation and hearsay grounds.

---

[29]Although the judge asked the Commonwealth if it wished to present evidence at the hearing, and none of the parties here argues that an evidentiary hearing should have been conducted, the law in the Commonwealth regarding forfeiture by wrongdoing had not been elucidated at that time. The parties, like the judge, were operating without the guidance provided by today's ruling.

[30]In choosing not to listen to the recordings, the judge noted, "If I think it's going to make a difference as to precisely what was said, then I will come back and ask to hear [them]."

4. *Application of doctrine to Davis and Brown.* The Commonwealth's case with respect to Davis and Brown stands on wholly different footing. The judge found that there was no evidence that Davis or Brown participated in procuring Crockett's unavailability. The Commonwealth asserts that the codefendants "engaged in a coordinated pattern of conduct designed to evade criminal punishment." According to the Commonwealth's theory, Davis and Brown forfeited their rights because Edwards's conduct in procuring Crockett's unavailability was "a continuation of" and "in furtherance" of a joint effort or conspiracy by all three defendants to cover up their participation in the crime and avoid conviction, and it was "reasonably foreseeable" as a consequence of the ongoing conspiracy. See *United States* v. *Thompson*, 286 F.3d 950, 965 (7th Cir. 2002), cert. denied, 537 U.S. 1134 (2003); *United States* v. *Cherry*, 217 F.3d 811, 820 (10th Cir. 2000).

Regardless whether the forfeiture by wrongdoing doctrine would apply in this jurisdiction to coconspirators to the procurement of a witness's unavailability, as in *United States* v. *Thompson, supra,* and *United States* v. *Cherry, supra,* the doctrine cannot be applied to Davis and Brown in the circumstances of this case. Because the Commonwealth has not even alleged facts (before the motion judge or this court) sufficient to support a conclusion of forfeiture by Davis or Brown, we need not remand the case for further proceedings on that issue.

We note at the outset that the Commonwealth did not charge any of the defendants with conspiracy and that the only charges based on a joint venture theory, assault and battery by means of a dangerous weapon, were dismissed against Davis and Brown. The Commonwealth has alleged no evidence of any "conspiracy" or "joint effort" among the defendants to secure Crockett's unavailability. Edwards's alleged procurement of Crockett's unavailability did not begin, according to the Commonwealth, until after Edwards was in custody, and the Commonwealth does not claim any contact between Edwards and the other codefendants after this point (other than pointing to a vague reference in one of Edwards's recorded telephone calls to a letter ["kite"] sent to Davis ["E"]).

The evidence presented by the Commonwealth with respect

to Davis and Brown concerns primarily the alleged actions of the three defendants in the immediate aftermath of the crime. At best, these allegations speak to some earlier conspiracy or joint venture to cover up the shooting, a concerted effort that had long since ended by the time of Edwards's alleged collusion with Crockett. See *Commonwealth* v. *Drew,* 397 Mass. 65, 71 (1986) (statement of alleged joint venturer made while participants in custody not admissible because any joint venture considered over); *Commonwealth* v. *Dahlstrom,* 345 Mass. 130, 134 (1962) (declarations of joint venturer made six days after crime did not occur during pendency of joint undertaking and thus not competent against defendant); *Commonwealth* v. *Mannos,* 311 Mass. 94, 105-106 (1942) (conspiracy ends when its object has been accomplished or frustrated). See also *Grunewald* v. *United States,* 353 U.S. 391, 401-402 (1957) ("subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment"). Moreover, the Commonwealth has presented no evidence that Edwards's actions in colluding with Crockett were "in furtherance" of any conspiracy involving the other two defendants, or that the collusion was "reasonably foreseeable" to Davis and Brown — two elements required by the courts in *United States* v. *Thompson, supra,* and *United States* v. *Cherry, supra.* Were we to adopt the rule set forth by United States Courts of Appeal in *Thompson* and *Cherry,* the facts as alleged by the Commonwealth are insufficient to support its application. Even accepting the Commonwealth's proffer, Davis and Brown could not have forfeited their rights to object to the substantive admission of Crockett's grand jury testimony under any coconspirator or joint venturer theory. The judge's findings and rulings with respect to those defendants, although made without the benefit of today's opinion, need not be revisited.[31]

*Conclusion.* "[This] question is one of broad public policy,

---

[31]The Commonwealth asks, in the alternative, that we order admission of the grand jury testimony through an expansion of our decisions in *Commonwealth* v. *Daye,* 393 Mass. 55, 75 (1984) (prior inconsistent statement of witness admissible as probative if made under oath before grand jury, witness can be effectively cross-examined, statement not coerced or merely confirma-

whether an accused person, placed upon trial for crime and protected by all the safeguards with which the humanity of our present criminal law sedulously surrounds him, can with impunity defy the processes of that law, paralyze the proceedings of courts and juries, and turn them into a solemn farce . . . ." *Diaz* v. *United States*, 223 U.S. 442, 458 (1912), quoting *Falk* v. *United States*, 15 App. D.C. 446, 460 (1899), cert. denied, 181 U.S. 618 (1901). By adopting the doctrine of forfeiture by wrongdoing, we, like many other jurisdictions, recognize that "[n]either in criminal nor in civil cases will the law allow a person to take advantage of his own wrong." *Diaz* v. *United States, supra.*

A judgment shall enter in the county court vacating the order of the judge denying the Commonwealth's motion to admit the grand jury testimony of Jeremy Crockett against Jermaine Edwards, affirming the order in respect to Eric Davis and Tyrone Brown, and remanding the matter to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

---

tion or denial of allegation by interrogator, and other corroborative evidence presented); and *Commonwealth* v. *Sineiro*, 432 Mass. 735, 745 (2000) (where witness feigning loss of memory, judge may admit evidence of prior testimony at probable cause hearing so long as testimony not coerced and witness present at trial for cross-examination). We reject this suggestion. Neither case applies to the instant situation. Both require an opportunity to cross-examine the declarant, something the defendants here are unable to do. Our recent decision in *Commonwealth* v. *Cong Duc Le, ante* 431 (2005), modifying a different rule articulated in *Daye*, does not affect this aspect of our decision.