Connolly, Thomas E., J.
This motion came before this court for an evidentiary hearing on February 1, 2006 on the Commonwealth’s Motion in Limine To Admit the Grand Jury Testimony of Cheryl Wall (“Ms. Wall”). The Commonwealth seeks to admit Ms. Wall’s grand jury testimony as substantive evidence at trial pursuant to the “forfeiture by wrongdoing doctrine” adopted in Commonwealth v. Edwards, 444 Mass. 526 (2005). The Commonwealth contends that Ms. Wall, the mother of the defendant, Steven Wall (the “Defendant”), testified in grand jury proceedings to incriminating statements made by her son shortly after a shooting. The Commonwealth alleges that the Defendant has colluded with his mother in order to ensure she is unavailable to testify at his trial.
During the evidentiary hearing on this matter, counsel for the Commonwealth, counsel for the Defendant, and the Defendant, were present. The following evidence was presented by the Commonwealth at the hearing:
1. Commonwealth’s Motion in Limine To Admit the Grand Jury Testimony of Cheryl Wall, with an attached affidavit of counsel, Mark D. Zanini, ADA, in support of the Commonwealth’s Motion in Li-mine.
2. Grand Jury Testimony of Cheryl Wall, June 14, 2001 (redacted), 16 pages.
3. Commonwealth’s Request for attendance of an out-of-state witness and certification of the Superior Court, 8 pages.
4. Nashua Street Jail Booking Sheet of Steven Wall, 1 page.
5. Call Detail Report, dated 12/7/05, PIN 0281835903, 21 pages.
6. Affidavit of John Bradley, 1 page.
7. Call Detail Report, dated 1/18/06, 1 page.
8. Transcript of Phone Conversation of January 14, 2006, 14 pages.
9. Compact Disc audio recording of January 14, 2006 telephone conversation.
The Court has read all the documents submitted, and in open court at said hearing has listened to the January 14, 2006 telephone conversation between the Defendant, and his mother, Ms. Wall. After careful consideration of all the evidence presented, the court makes the following findings of fact and rulings of law.

FINDINGS OF FACT

The Defendant has been indicted on six charges, as follows:
001. Armed assault with intent to murder — Ch. 265, §18(b).
002. Armed assault with intent to murder — Ch. 265, § 18(b).
003. Assault and Battery with a Dangerous Weapon — Ch. 265, §15A(b).
004. Assault and Battery with a Dangerous Weapon — Ch. 265, §15A(b).
005. Possession of a Firearm, not at home or work— Ch. 269, § 10(a).
006. Possession of a Firearm, no FID card — Ch. 269, §10(h).
The Commonwealth wishes to have Ms. Wall testify at the trial of her son. Ms. Wall has previously testified before the grand jury to admissions that Defendant had made to her shortly after the shootings that led to the current indictments. Ms. Wall is presently, or has been recently, residing in Deland, Florida. This court previously allowed the Commonwealth’s request for issuance of process for Ms. Wall. The court issued a certificate, pursuant to G.L.c. 233, §13A, the Uniform Act to Secure the Attendance of a Witness from a State, in order to secure the presence of Ms. Wall in Massachusetts for a trial scheduled to begin January 20, 2006.
On January 5, 2006, John Brádley, an investigator with the Florida State Attorney’s Office, acting on the Massachusetts process order, made an effort to serve Ms. Wall. After obtaining her driver’s license photo and information, Investigator Bradley proceeded to the address given for Ms. Wall. At nine in the morning as he knocked on the door, Investigator Bradley could hear music playing inside the house. Since no one answered at the front door he went around to the back and knocked there. At some point while he was knocking on the door someone inside the house turned off the music. No one ever answered the door. Investigator Bradley showed Ms. Wall’s photo to a couple of neighbors. Those neighbors acknowledged that Ms. Wall did in fact live in the house. Investigator Bradley went back to the house at least two times around January 12 and January 13. However, he was still unable to get anyone to answer the door. While visiting the *550 house, investigator Bradley observed that the TV was on. Investigator Bradley left a subpoena for Ms. Wall in the doorjamb. Ms. Wall did not appear on the date and time of the subpoena.
Prisoners at the Nashua Street jail are allowed to make a certain number of telephone calls to their relatives and friends. Prisoners are also allowed to make calls to their lawyers. The conversations between a prisoner and his lawyer are not tape-recorded. However, every other call that a prisoner makes from the jail is taped for security reasons. All calls made must be a collect call, and a recording at the beginning of the call informs the person called that the call is from a prisoner at the Nashua Street Jail.
On January 14, 2006 the defendant, Steven Wall, made a collect call from the Nashua Street Jail to his mother, Ms. Cheryl Wall. The call was made to Ms. Wall’s address in Deland, Florida. Ms. Wall answered the call and her and her son had a conversation which included the following exchanges:
Steven Wall: “What’s going on?”
Cheryl Wall: “Oh, they’re down here trying to find me . . . they sent an investigator here yesterday.”
Steven Wall “They already got pictures of you accepting mail. I told you to go down to Pucci’s house.”
Cheryl Wall “I did not accept the mail . . . They haven’t found me. They haven’t had any physical contact with me at all.”
Steven Wall: “Nah what I’m saying is you should go down to Pucci’s house. I don’t go back to court until the 20th.”
The telephone conversation continues for another 10-15 minutes. During that time the Defendant and his mother debate whether the Florida and Massachusetts courts will be able force Ms. Wall to testify at her son’s trial. Ms. Wall argues that as long as she avoids physical contact with whomever is trying to serve her there is nothing the prosecutor can do to secure her testimony. The Defendant is concerned a warrant can be issued for Ms. Wall and the authorities would be able to hold her for use at his trial. The Defendant opines that without his mother’s testimony the prosecution has no case against him. Several times, he advises his mother go to “Pucci’s house” until after his trial. On the tape, Ms. Wall seems upset that “dodging court appearances” has inconvenienced her. Initially, Ms. Wall seems unreceptive to going to “Pucci’s House,” based on her belief that she was already doing enough to avoid a subpoena. The Defendant seems frustrated that his mother is not doing enough to hide herself until after his court appearance. At the end of the tape it is not entirely clear what Ms. Wall has decided to do, but the following exchange takes place:
Steven Wall: “I’m not calling, I’m not going to write, I’m not going to call no more. And just I already explained to you, man. So that’s all I can say, man.”
Cheryl Wall: “Yeah.”
Steven Wall: “Alright.”
Cheryl Wall: “Alright.”

Rulings of Law

“[A] defendant forfeits, by virtue of wrongdoing, the right to object to the admission of an unavailable witness’s out-of-court statements on both confrontation and hearsay grounds on findings that (1) the witness is unavailable; (2) the defendant was involved in, or responsible for, procuring the unavailability of the witness; and (3) the defendant acted with the intent to procure the witness’s unavailability.” Commonwealth v. Edwards, 444 Mass. 526, 540 (2005). “A defendant’s involvement in procuring a witness’s unavailability need not consist of a criminal act and may include a defendant’s collusion with a witness to ensure that the witness will not be heard at trial.” Id.
The causal link between a defendant’s actions and a witness’s unavailability may be established by either 1) a defendant putting forward to a witness the idea to avoid testifying, either by threats, coercion, persuasion, or pressure or 2) by the defendant actively facilitating the carrying out of the witness’s independent intent not to testify. Id. at 541.
Here the Defendant’s actions fit squarely within the Edwards “forfeiture by wrongdoing” doctrine. Ms. Wall has purposefully avoided service of process and has remained unavailable to testify at the behest of her son. Although the evidence presented to the court does not sufficiently establish that Ms. Wall moved from Massachusetts to Florida at the direction of her son, such a move seems reasonably likely. In any event, it is clear that once Ms. Wall moved to Florida, the Defendant actively participated and counseled his mother on how to best avoid having to testify at his trial. In his phone conversation of January 14, 2006 Defendant uses persuasive and/or pressuring language to encourage his mother to go to “Pucci’s house” until after his trial. Defendant is heard to remark that if his mother was unavailable to testify, the case against him will collapse.
Cases from other jurisdictions, cited by the SJC in Edwards, support the application of the “forfeiture by wrongdoing” doctrine in this case. State v. Hallum, 606 N.W.2d 351, 356-58 (Iowa 2000) (applying the doctrine where a defendant wrote letters encouraging the witness, his half-brother, to “hang in there” and telling him not to discuss the case over the telephones. The court found that the defendant had procured his brother’s unavailability “by encouraging and influencing” him not to testify); People v. Pappalardo, 152 Misc.2d 364, 369 (N.Y. 1991) (where “the defendant and this witness were involved in planning and preparing strategies to enable [the witness] to avoid testifying,” and that the “defendant was and is extensively involved” in the witness’s refusal to testify).
Whether Ms. Wall ultimately went to “Pucci’s house” is irrelevant. “[T]hat a defendant and a witness are *551 ultimately unable to carry out their plan to engineer the witness’s unavailability through the precise method intended does not necessarily preclude a finding of forfeiture in collusion cases.” Edwards, 444 Mass, at 541. “Where a defendant’s goal in colluding with a witness is to deprive the Commonwealth of valuable testimony, the defendant maybe no less successful where the desired result is achieved by means other than those originally contemplated ...” Id.
“Society is entitled to eveiy person’s evidence in order that the truth may be discovered.” Alberts v. Devine, 395 Mass. 59, 67 (1985). The application of the forfeiture by wrongdoing doctrine in this case will serve to “ensure that a wrongdoer does not profit in a court of law by reason of his miscreancy.” United States v. Houlihan, 92 F.3d 1271, 1282-283 (1st Cir. 1996).

ORDER

For the foregoing reasons, the Commonwealth’s Motion in Limine to Admit the Grand Juiy Testimony of Cheryl Wall as substantive evidence is ALLOWED.