NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12467

COMMONWEALTH  vs.  JOSHUA ROSADO.


Suffolk.      May 7, 2018. - September 14, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, & Cypher, JJ.


Constitutional Law, Confrontation of witnesses.  Practice,
    Criminal, Confrontation of witnesses.  Witness,
    Unavailability.  Evidence, Unavailable witness.



    Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on December 6, 2017.

    The case was reported by Budd, J.


    Katherine E. McMahon, Assistant District Attorney, for the
Commonwealth.
    Michelle A. Dame for the defendant.


    GANTS, C.J.  The issue on appeal concerns the scope of the

doctrine of forfeiture by wrongdoing.  In Commonwealth

v. Edwards, 444 Mass. 526, 540 (2005), we held that a defendant

forfeits the right to object to the admission in evidence of an

unavailable witness's out-of-court statements on both

confrontation and hearsay grounds if the Commonwealth proves by

a preponderance of the evidence that "(1) the witness is unavailable; (2) the defendant was involved in, or responsible for, procuring the unavailability of the witness; and (3) the defendant acted with the intent to procure the witness's unavailability."  We conclude that, on the facts of this case, the Commonwealth has failed to meet its burden of proving any of the three elements articulated in Edwards.  See Mass. G. Evid. § 804(b)(6) (2018).

Specifically, as to the first element, a witness who has been served with out-of-State process and ordered to appear at a trial in Massachusetts is not unavailable simply because the witness has informed the prosecutor that he or she does not want to testify.  As to the second element, the defendant was not involved in, or responsible for, procuring the unavailability of the witness where the defendant attempted, albeit unsuccessfully, to intimidate the witness from testifying against a friend of the defendant in a murder case, but did nothing to cause her to be unavailable in the witness intimidation case against himself.  As to the third element, the defendant's intent to intimidate the witness to make her unavailable to testify against his friend in the earlier murder case, even if proved by a preponderance of the evidence, does not suffice to prove that the defendant acted with the intent to procure the witness's unavailability as a potential witness

against the defendant regarding his acts of intimidation. Consequently, we affirm the motion judge's denial of the Commonwealth's motion in limine to admit in evidence the grand jury testimony of the witness and her transcribed interview with State police troopers.

1. Background. The following facts were either stipulated to by the parties or are undisputed.

The defendant, Joshua Rosado, is the former boy friend of the witness, Shakira Ortiz, and the father of her young daughter. On December 3, 2015, a Hampden County grand jury indicted Jean C. Mercado for murder and other crimes. Ortiz was a key witness for the prosecution in that case, and the defendant was a friend of Mercado.

On February 7, 2017, the day before Mercado's trial began, Ortiz was interviewed by two State police troopers regarding communications she had received from the defendant. Ortiz stated that a friend had privately sent her messages on Facebook, a social networking Web site, regarding certain public messages that the defendant had "posted" on Facebook about Ortiz. One posted message stated: "My baby mom is out here on the bracelet jumping from house to house with my daughter. And she's a rat at that. Like how you snitching on me, gonna shake my head. Can't trust nobody. Fact, had this trifling bitch around for so many years and I didn't know she was an undercover

rat." A second posted message stated: "I'll give someone 200 to beat the fuck out of my baby mom when y'all see her or I'll bring her to -- or I'll bring you to her right now." The defendant urged her not to testify against Mercado, and told her that she should lie to the police so that she would not have to testify. Ortiz stated that she had telephoned the defendant after she learned of these Facebook messages, and that he responded by threatening to hit her every time he saw her. She said that these Facebook messages made her "[e]mbarassed" and "[s]cared," and that she was afraid to walk around Springfield and run the risk of encountering the defendant. Ortiz did testify at Mercado's trial, but the jury found Mercado not guilty on all charges.

On April 20, 2017, a Hampden County grand jury indicted the defendant on one count of intimidation of a witness (Ortiz), in violation of G. L. c. 268, § 13B. On November 13, 2017, the Commonwealth moved in limine to admit in evidence Ortiz's recorded interview with the State police troopers and her grand jury testimony under the doctrine of forfeiture by wrongdoing, in lieu of Ortiz's testimony at the defendant's trial.

The prosecutor attested that Ortiz now resides outside Massachusetts and had been subpoenaed and ordered to appear in court, pursuant to G. L. c. 233, § 13B, for the defendant's

trial on November 14, 2017.[1] However, on October 31, 2017, Ortiz told the prosecutor during a telephone call that she was not going to testify at trial because she was fearful for the safety of herself and her daughter. Ortiz had informed a number of individuals, including the prosecutor, that the defendant had not "bothered" her since he was arrested on the witness intimidation charge, and that she was no longer afraid of the defendant. But Ortiz believed that the Facebook messages that the defendant had posted created a safety risk for her from known and unknown individuals, and that she feared retribution from Mercado and his associates if she returned to Springfield. At the motion hearing, the prosecutor informed the judge that he "was under the impression" that Ortiz, if forced to return to Springfield to testify, would refuse to testify and risk being held in contempt.

On November 28, 2017, the motion judge issued a written memorandum of decision denying the Commonwealth's motion in limine. The judge, citing Edwards, noted that, "[h]ere, the Commonwealth must prove by a preponderance of the evidence

_____

[1] The Commonwealth filed an impounded motion, pursuant to G. L. c. 233, § 13B, of the Uniform Law to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings to secure the attendance of Shakira Ortiz. Following a hearing in a court in the State where Ortiz currently resides, Ortiz was ordered by that court to appear in Massachusetts for the defendant's trial, despite her testimony that she was afraid to return to Massachusetts.

that[,] through the defendant's intimidation of the witness to prevent her from testifying in a prior case against one of his associates, he also had the intent of procuring her unavailability in the present proceeding against him for those same acts of intimidation."  The judge concluded that the Commonwealth had not met that burden, declaring that "[t]he Commonwealth has not presented evidence that the defendant intended to intimidate the witness in order to prevent her from testifying against him in the future for that same intimidation, or for any other future charges against him."

The Commonwealth petitioned for relief under G. L. c. 211, § 3, from the judge's order denying the Commonwealth's motion in limine.  The single justice reserved and reported the matter to the full court.[2]

---

[2] The defendant contends that the Commonwealth has failed to establish exceptional circumstances sufficient to justify the extraordinary relief available under G. L. c. 211, § 3.  "We bypass the issue, however, because where a single justice reserves decision and reports a case to the full court, we grant full appellate review of the matters reported."  Charbonneau v. Presiding Justice of the Holyoke Div. of the Dist. Court Dep't, 473 Mass. 515, 518 (2016).  We add that it is appropriate to exercise our powers under G. L. c. 211, § 3, to address questions reserved and reported by a single justice which "involve matters of great import not only to the defendant but also to the Commonwealth," Blaisdell v. Commonwealth, 372 Mass. 753, 755 (1977), keeping in mind that "we can and should act 'at whatever stage in the proceedings it becomes necessary to protect substantive rights.'"  Id., quoting Myers v. Commonwealth, 363 Mass. 843, 844 (1973).

2.  Discussion.  The doctrine of forfeiture by wrongdoing balances a criminal defendant's rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights to confront the witnesses against him or her, see Commonwealth v. Greineder, 464 Mass. 580, 589, cert. denied, 571 U.S. 865 (2013), with the equitable principle that a defendant should not benefit from his or her wrongdoing in making a witness unavailable to be confronted. See Reynolds v. United States, 98 U.S. 145, 159 (1878) ("the rule has its foundation in the maxim that no one shall be permitted to take advantage of his own wrong"); United States v. Houlihan, 92 F.3d 1271, 1282-1283 (1st Cir. 1996), cert. denied, 519 U.S. 1118 (1997) (doctrine "ensure[s] that a wrongdoer does not profit in a court of law by reason of his miscreancy").

In 1878, the United States Supreme Court established the doctrine of forfeiture by wrongdoing, declaring, "The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away."  Reynolds, 98 U.S. at 158. See Crawford v. Washington, 541 U.S. 36, 62 (2004) (doctrine of

forfeiture by wrongdoing "extinguishes" criminal defendant's right to confrontation under Sixth Amendment).

In 2005, we adopted the doctrine of forfeiture by wrongdoing and concluded that a defendant, by his or her wrongdoing, may also forfeit his or her right under art. 12 and our common-law rules of evidence to object to the admission of hearsay evidence.  See Edwards, 444 Mass. at 536.  We held that the Commonwealth must prove three elements by a preponderance of the evidence for forfeiture by wrongdoing to apply:  "(1) the witness is unavailable; (2) the defendant was involved in, or responsible for, procuring the unavailability of the witness; and (3) the defendant acted with the intent to procure the witness's unavailability."  Id. at 540.  See Mass. G. Evid. § 804(b)(6) (incorporating common-law doctrine of forfeiture by wrongdoing articulated in Edwards as exception to general rule barring admission of hearsay evidence).[3]  Whether the Commonwealth has proved these three elements by a preponderance of the evidence is a preliminary question of fact on the

_____

[3] In 2010, we added a fourth element for the admission of otherwise inadmissible hearsay -- the hearsay must be reliable. See Commonwealth v. Szerlong, 457 Mass. 858, 866 (2010), cert. denied, 562 U.S. 1230 (2011).  We noted that, "[e]ven though the defendant forfeited his right to object on both confrontation and hearsay grounds to the victim's out-of-court statements, he is still entitled to due process," and "due process requires that any hearsay admitted against the defendant be reliable." Id.  See Commonwealth v. Edwards, 444 Mass. 526, 540 n.21 (2005) ("There may be some statements so lacking in reliability that their admission would raise due process concerns").

admissibility of evidence that is decided by a judge.  See Mass. G. Evid. § 104(a) (2018).

"A defendant's involvement in procuring a witness's unavailability need not consist of a criminal act" -- the "wrongdoing" in the doctrine of forfeiture by wrongdoing is simply the intentional act of making the witness unavailable to testify or helping the witness to become unavailable. See Edwards, 444 Mass. at 540-542.  For example, where a defendant actively assists a witness's efforts to avoid testifying, with the intent to keep that witness from testifying, forfeiture by wrongdoing may be established "regardless of whether the witness already decided 'on [her] own' not to testify."  Id. at 541.  See Commonwealth v. Szerlong, 457 Mass. 858, 864-865 (2010), cert. denied, 562 U.S. 1230 (2011) (forfeiture by wrongdoing applies where defendant who was accused of assaulting his girl friend married her with intent to enable her to claim spousal privilege and thereby avoid testifying against defendant).

A defendant does not forfeit his or her right to object to the admission of evidence on confrontation or hearsay grounds simply by causing a witness's unavailability; the defendant must also intend to prevent the witness from testifying against him or her.  See Giles v. California, 554 U.S. 353, 361-362 (2008). In Giles, the defendant allegedly killed his former girl friend

approximately three weeks after he had accused her of infidelity, assaulted her, and threatened to kill her if he found her cheating on him. See id. at 356-357. Even though the defendant's killing of her inevitably made her unavailable to testify at the trial regarding her murder, the Court declined to admit in evidence under the doctrine of forfeiture by wrongdoing the prior statements of the girl friend to law enforcement regarding the physical abuse she suffered at the hands of the defendant. See id. at 368.[4] But if the defendant in Giles had killed his former girl friend with the intent to prevent her from cooperating with law enforcement in an investigation of his prior assaults, or with the intent to prevent her from testifying against him with respect to those assaults, then her

---

[4] The Supreme Court noted, in a plurality opinion, that "[t]he manner in which the [forfeiture by wrongdoing doctrine] was [historically] applied makes plain that unconfronted testimony would not be admitted without a showing that the defendant intended to prevent a witness from testifying. In cases where the evidence suggested that the defendant had caused a person to be absent, but had not done so to prevent the person from testifying -- as in the typical murder case involving accusatorial statements by the victim -- the testimony was excluded unless it was confronted or fell within the dying-declarations exception. Prosecutors do not appear to have even argued that the judge could admit the unconfronted statements because the defendant committed the murder for which he was on trial." (Emphasis in original.) Giles v. California, 554 U.S. 353, 361-362 (2008).

prior statements to law enforcement may have been admissible under the doctrine.  See id. at 377.[5]

Here, the Commonwealth claims that the defendant's intent to prevent Ortiz from testifying in the murder trial against Mercado should suffice as the intent needed to invoke the doctrine of forfeiture by wrongdoing at the witness intimidation trial against the defendant.  We decline to adopt such an expansion of the doctrine.  A defendant forfeits his right to object to otherwise inadmissible hearsay solely as a result of his own wrongdoing in seeking to prevent a witness from testifying against him, not against a third party in another proceeding.  See, e.g., Giles, 554 U.S. at 361, quoting E. Powell, The Practice of the Law of Evidence 166 (1858) (forfeiture rule applied when witness "had been kept out of the way by the prisoner, or by some one on the prisoner's behalf, in

---

[5] A plurality of the Court in Giles further noted that "[a]cts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions."  Giles, 554 U.S. at 377.  They invited the trial judge to consider on remand that, "[w]here such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution -- rendering her prior statements admissible under the forfeiture doctrine."  Id.  Highly relevant to this inquiry would be "[e]arlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help," as well as "evidence of ongoing criminal proceedings at which the victim would have been expected to testify."  Id.

order to prevent him from giving evidence <u>against him</u>" [emphasis added]); <u>United States</u> v. <u>Thompson</u>, 286 F.3d 950, 962 (7th Cir. 2002), cert. denied, 537 U.S. 1134 (2003) ("[t]he primary reasoning behind" rule of forfeiture by wrongdoing is "to deter criminals from intimidating or 'taking care of' potential witnesses <u>against them</u>" [emphasis added]).

The equitable principle at the heart of the doctrine of forfeiture by wrongdoing is that a defendant should not be able to benefit from the unavailability of a witness at his own trial where the defendant caused the witness to be unavailable. A defendant's attempt to make the witness unavailable at another trial that did not involve the defendant does not warrant forfeiting the fundamental "bedrock procedural guarantee" of an accused to be confronted with the witnesses against him, see <u>Crawford</u>, 541 U.S. at 42, citing <u>Pointer</u> v. <u>Texas</u>, 380 U.S. 400, 406 (1965), because the defendant does not benefit from the unavailability of the witness at another person's trial. In the context of this case, the defendant would not benefit if he had successfully intimidated Ortiz from testifying against Mercado at the murder trial; the defendant would benefit only if he had prevented Ortiz from testifying against him at his witness intimidation trial. If the defendant had attempted to prevent Ortiz from testifying against him at his intimidation trial, then the doctrine might have applied if the other elements

in Edwards were satisfied.  But there is no evidence in the record before us that the defendant intended anything more than to prevent Ortiz from testifying against Mercado, and that does not suffice to establish the intent required for invoking the doctrine of forfeiture by wrongdoing in the defendant's trial.[6]

We are aware of no case in which the doctrine of forfeiture by wrongdoing has been applied where a defendant did not seek, alone or with others, to prevent a witness from testifying against him, and the Commonwealth has cited no such case.  The Commonwealth relies for support primarily on United States v. Gray, 405 F.3d 227, 230-233 (4th Cir.), cert. denied, 546 U.S. 912 (2005), where the defendant was charged with mail fraud and wire fraud for her fraudulent receipt of life insurance proceeds following the deaths of her second husband and a former

---

[6] We need not decide in this case whether our doctrine of forfeiture by wrongdoing may be invoked where a defendant causes a witness to be unavailable through murder or intimidation during a pending criminal investigation of the defendant, where the defendant intends to prevent the witness from testifying, and where it was "reasonably foreseeable that the investigation [would] culminate in the bringing of charges" against the defendant.  See United States v. Burgos-Montos, 786 F.3d 92, 115 (1st Cir.), cert. denied, 136 S. Ct. 599 (2015), quoting United States v. Houlihan, 92 F.3d 1271, 1280 (1st Cir. 1996), cert. denied, 519 U.S. 1118 (1997).  Nor need we decide whether the doctrine might apply if the defendant had recognized the possibility that his conduct might result in a criminal charge of intimidation of a witness and threatened Ortiz with harm if she were to testify against Jean C. Mercado in the murder trial or against him in a witness intimidation trial.  There is no evidence that the defendant recognized that possibility here, or that his threats addressed that possibility.

lover.  The evidence in Gray demonstrated that the defendant shot and killed her second husband after he had brought criminal charges against her for assault, and that she received monies as the beneficiary of his life insurance policy.  See id. at 231-232.  The defendant challenged the admission of her deceased husband's prior statements under Fed. R. Evid. 804(b)(6), which codifies the Federal common-law doctrine of forfeiture by wrongdoing.  See id. at 241.[7]  The defendant argued that the rule should not apply because the evidence showed that she did not intend, by killing her husband, to make him unavailable as a witness in a trial accusing her of fraudulently obtaining the proceeds of his life insurance policy.  See id.  The court rejected her argument, noting that the evidence showed that she had killed her husband to make him unavailable as a witness in a trial accusing her of assault, and declaring that "[a] defendant who wrongfully and intentionally renders a declarant unavailable as a witness in any proceeding forfeits the right to exclude, on hearsay grounds, the declarant's statements at that proceeding and any subsequent proceeding" (emphasis added).  Id. at 242. The Commonwealth argues that this case supports the proposition that the doctrine of forfeiture by wrongdoing is not limited to

_____

[7] Rule 804(b)(6) of the Federal Rules of Evidence provides that "[a] statement offered against a party" is not excluded by the rule against hearsay where the party "wrongfully caused -- or acquiesced in wrongfully causing -- the declarant's unavailability as a witness, and did so intending that result."

the proceeding that was the focus of the defendant's attempt to make the witness unavailable to testify.

The court in Gray, however, made clear that the Federal rule would apply only when "the defendant's wrongdoing was intended to, and did, render the declarant unavailable as a witness against the defendant" (emphasis added).  Id. at 241.  Indeed, the court specifically declared, "We emphasize that the intent requirement in Rule 804(b)(6) continues to limit application of the forfeiture-by-wrongdoing exception to those cases in which the defendant intended, at least in part, to render the declarant unavailable as a witness against him" (emphasis added).  Id. at 242 n.9.  Because there is no evidence in this case that the defendant intended to make Ortiz unavailable as a witness against him, we need not reach the issue whether our common-law doctrine of forfeiture by wrongdoing would apply where a defendant renders a declarant unavailable as a witness in "any proceeding" against that defendant.  See id. at 242.

We therefore conclude that the judge did not err in ruling that the doctrine of forfeiture by wrongdoing did not apply in this case because the Commonwealth failed to prove by a preponderance of the evidence that the defendant intended to make Ortiz unavailable as a witness against him.  Having found that the Commonwealth failed to prove the third element of

forfeiture by wrongdoing required under Edwards, 444 Mass. at 540, the judge did not address (and did not need to address) whether the Commonwealth had met its burden of proving the first two elements.  We address them here, and conclude that the Commonwealth also failed to prove these two elements by a preponderance of the evidence.

Forfeiture by wrongdoing requires the Commonwealth to demonstrate that the witness is unavailable.  See Edwards, 444 Mass. at 540.  A declarant is considered to be unavailable as a witness if, as relevant here, the declarant "is absent from the trial or hearing and the statement's proponent has not been able to procure the declarant's attendance by process or other reasonable means," Mass. G. Evid. § 804(a)(5), or if the declarant "is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies," Mass. G. Evid. § 804(a)(1).[8]  Here, after Ortiz was served with out-of-State process and ordered to come to Massachusetts to testify, she informed the prosecutor that she did not want to return.  But there is nothing in the record to indicate that the Commonwealth was unable to compel her appearance.  Moreover, there is nothing in the record to

---

[8] A declarant is also considered unavailable as a witness where the declarant "cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness."  Mass. G. Evid. § 804(a)(4).

indicate that Ortiz has invoked any privilege that would exempt her from testifying, or that she has any valid privilege that she could reasonably invoke. We need not decide here whether to adopt Proposed Mass. R. Evid. 804(a)(2), which, like Fed. R. Evid. 804(a)(2),[9] treats a witness as "unavailable" if the witness "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so," see Advisory Committee's Note to Proposed Mass. R. Evid. 804(a)(2), because the only indication in the record that Ortiz would refuse to testify and risk being held in contempt is the prosecutor's assertion that he "was under the impression" that she would do so. See Commonwealth v. Fisher, 433 Mass. 340, 355 (2001) (noting that "we have not yet adopted" Proposed Mass. R. Evid. 804[a][2]). See also Opinion of the Justices, 406 Mass. 1201, 1211 (1989) ("We do not . . . equate a refusal to testify . . . with that measure of necessity which we have held permits the use of prior testimony"). But see Commonwealth v. Pittman, 60 Mass. App. Ct. 161, 170 (2003) (witness unavailable where "defense counsel made timely service of a subpoena upon [defense witness,] which she ignored in favor of attending a family

---

[9] Under Fed. R. Evid. 804(a)(2), "[a] declarant is considered to be unavailable as a witness if the declarant . . . refuses to testify about the subject matter despite a court order to do so."

funeral").  On this record, the Commonwealth did not meet its burden of proving that Ortiz was unavailable as a witness.

Even if Ortiz were an unavailable witness, the Commonwealth failed to meet its burden of proving that the defendant was involved in, or responsible for, procuring her unavailability. See Edwards, 444 Mass. at 540.  There is no evidence that the defendant has taken any action to cause Ortiz not to testify against him in the witness intimidation case.  She informed the prosecutor, among other individuals, that the defendant had not "bothered" her since he was arrested on the witness intimidation charge, and that she no longer feared him.  Rather, she feared retribution from Mercado and his associates as a result of testifying at Mercado's murder trial.  We do not question the sincerity of her fear, but she does not point to the defendant as the cause of her fear.

3.  Conclusion.  For the foregoing reasons, we affirm the judge's order denying the Commonwealth's motion in limine to admit Ortiz's out-of-court statements in evidence, pursuant to the doctrine of forfeiture by wrongdoing.

So ordered.