NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13570

COMMONWEALTH  vs.  RENARDO C. WILLIAMS.


Plymouth.     October 14, 2025. – March 30, 2026.

Present:  Budd, C.J., Kafker, Georges, & Wolohojian, JJ.


Homicide.  Assault with Intent to Kill.  Firearms.  Self-
    Defense.  Evidence, Self-defense, Relevancy and
    materiality, Inference, Motive, Hearsay, Unavailable
    witness.  Practice, Criminal, Hearsay, New trial, Capital
    case.


Indictments found and returned in the Superior Court
Department on July 31, 2018.

The cases were tried before Robert B. Gordon, J.


Jeffrey L. Baler for the defendant.
Melissa W. Johnsen, Assistant District Attorney, for the
Commonwealth.


BUDD, C.J.  A jury convicted the defendant, Renardo

Williams, of murder in the first degree of Bethgy Cator on

theories of extreme atrocity or cruelty and deliberate

premeditation, and of assault with attempt to kill Mayklens

Francois, as well as firearms offenses.[1]  The defendant appeals

from his convictions seeking a new trial or a reduction of the

murder verdict.  After full consideration of the entire record,

we vacate his convictions of murder in the first degree and

assault with attempt to kill and remand for a new trial.

Consistent with Commonwealth v. Guardado, 493 Mass. 1, 12

(2023), cert. denied, 144 S. Ct. 2683 (2024), we also vacate his

firearms convictions.

Background.  We summarize the facts as the jury could have

found them, reserving certain details for later discussion.

1.  The shooting.  Late in the evening on May 12, 2018, the

defendant pulled into the parking lot of a convenience store in

Brockton, accompanied by his girlfriend, Chanel Martins,[2] and a

friend, Roberto Baez.[3]  After the defendant parked, Martins went

inside the store.  While they waited for Martins, a car pulled

in on the passenger's side of the defendant's vehicle.  The

defendant, who testified on his own behalf, recognized both the

---

[1] The jury convicted the defendant of unlawful possession of a firearm and unlawful possession of a loaded firearm.

[2] Martins, who was later charged as an accessory after the fact, testified under a cooperation agreement under which the charges against her were dismissed in exchange for her testimony.

[3] Before the jury were sworn, and outside their presence, Baez invoked his privilege against self-incrimination under the Fifth Amendment to the United States Constitution.

driver, Bethgy Cator, and the front seat passenger, Mayklens Francois.

Cator asked the defendant to sell him some marijuana. The defendant agreed, and both men then backed their cars into the rear corner of the parking lot. At that point, Baez got out of the defendant's car to go into the store, and the defendant got into the back seat of Cator's car, behind the driver's seat.

Cator had asked for an ounce of marijuana, and the defendant asked for $200 in exchange. Cator explained that they did not have that much cash, but that there was a buyer waiting nearby, and they could go together to complete the transaction and make up the difference. The defendant agreed. Before Cator pulled out of the lot, Baez and Martins emerged from the convenience store and the defendant threw Baez his keys, instructing him to follow Cator's car. Baez in turn passed the keys to Martins, who then followed Cator out of the parking lot, approximately twenty seconds behind him.

Cator drove some distance down the road, and then pulled over. The defendant testified that he turned around to see whether Baez and Martins were still behind them, and that, when he turned back toward the front of the car, Francois was pointing a gun at him. The defendant asked whether the men were robbing him for an ounce of marijuana, and Cator responded that they were robbing him "for everything." The defendant told them

they could have what he had -- one-quarter pound of marijuana, a watch, and two gold chains -- if they would put the gun away and let him out. According to the defendant, Cator refused and informed the defendant that they were taking him to his house to rob it. Cator then resumed driving while Francois kept the gun pointed at the defendant.

Soon after that, Cator turned into the parking lot of a laundromat, made a sharp left turn into a parking spot, and then stopped abruptly. The defendant testified that at this sudden movement, Francois turned away, so he attempted to escape. As he moved to open the car door, he saw what he believed was Cator reaching for a gun below his seat. This prompted the defendant to reach for his own gun, tucked into the front right pocket of the basketball shorts he was wearing under his sweatpants. The defendant testified that, as he was getting out of the car, he heard what sounded to him like a shot or a "slap" sound. Assuming that Francois had started to shoot at him, the defendant turned and fired toward both men. When he was out of ammunition, the defendant closed the door and ran from Cator's car.

Meanwhile, Martins and Baez had followed Cator's car into the laundromat parking lot. Surveillance footage of the incident shows flashes from the driver's side of Cator's car as Martins pulled past it. When Martins stopped, the defendant ran

around Cator's car and got into the back seat behind Martins. He told her, "Go," and she did.

Police officers responded to the scene based on an alert from ShotSpotter[4] and a 911 call from Francois. Both Cator and Francois were found suffering from multiple gunshot wounds; Cator was pronounced dead a short time later.

The defendant, who fled the Commonwealth with Martins, was arrested days later just after crossing the State border back into Massachusetts.

2. The investigation. An investigating officer documented the following ballistic evidence at the scene. There were seven spent .40 caliber projectile casings found in a cluster about one car length behind Cator's rear driver's side wheel.[5] Four other spent .40 caliber shell casings were located within a few feet of the cluster. No spent casings were located inside the car. The Commonwealth's ballistics expert testified that shell casings are typically ejected to the shooter's right, or occasionally straight up, but almost never to the left.

---

[4] ShotSpotter is a proprietary gunfire-detection software that uses microphones set up at different locations throughout a community to record gunfire and triangulate its location. See Commonwealth v. Rios, 496 Mass. 11, 18 n.6 (2025).

[5] When first responders removed Cator from the car, the car rolled about half a car length forward, into a utility pole, because his foot had been on the brake. References to the position of the car describe the car after it rolled forward.

In addition to the casings, three spent projectiles were recovered from inside the car, all of them .40 caliber. There was also damage to the car consistent with gunfire, including holes through the driver's headrest and front passenger's seat. A silver .25 caliber firearm with a wood grip was found in a puddle a few feet behind and away from the driver's side of Cator's car. The safety was on, and a spent casing was found stuck in the chamber when the slide was pulled back. In that state, the gun could not be fired. The gun's magazine contained one live round, also .25 caliber. There were no fingerprints on either the gun or the magazine.

Several months later, a defense investigator inspected the car and located an unrecovered .40 caliber projectile embedded in the floor of the front passenger's seat. No projectiles or casings consistent with a .25 caliber weapon were ever found in the vehicle or at the scene, aside from the one lodged in the chamber of the firearm recovered from the parking lot.

When Cator's car was processed, State police discovered fingerprints matching those of the defendant on the top of the rear driver's side door frame. Inside the car, investigators also found a brown canvas bag containing individual plastic bags of a substance the investigators believed was marijuana, a blue backpack containing several pills, two plastic bags of white

powder believed to be illegal drugs, and $180 in the driver's area of the car.

Discussion. On appeal, the defendant presses three primary claims of error by the trial judge: (1) mishandling of the admission in evidence of the surviving victim's hearsay statement, (2) failure to admonish the prosecutor in front of the jury for his argumentative cross-examination of the defendant, and (3) failure to instruct the jury on the role of mistaken belief and the duty to retreat. As explained infra, our holding turns on the defendant's first argument.

Francois, the surviving victim, was interviewed by police. Because he was unavailable to testify at trial,[6] the defendant moved in limine to admit certain of the statements Francois made during the interview. As relevant here, the police report summarizing the interview of Francois contained his statements (1) that the silver handgun recovered from the parking lot "was

---

[6] Although Francois's statements to police were hearsay, the parties agreed that Francois was unavailable as a witness based on his failure to respond to summonses issued by both parties and the prosecutor's report that when he spoke to Francois by telephone, the latter was living out of State at an unknown address and had indicated that "he had no intention of coming in." See Commonwealth v. Rosado, 480 Mass. 540, 548-549 (2018) (applying Mass. G. Evid. § 804[a][5]); Commonwealth v. Charles, 428 Mass. 672, 678 (1999), quoting Ohio v. Roberts, 448 U.S. 56, 76 (1980) ("Where the prosecutor's efforts would be futile, and result in a 'great improbability' of successfully procuring the witness, the witness is essentially unavailable," accepting principles expressed in Fed. R. Evid. 804[a][5] as basis of unavailability).

his firearm, which he carried in his pants," (2) that "after he was shot, he retrieved the firearm from his pant pocket and threw it from the car after the shooting," and (3) that he "threw it from the vehicle after he called 911" because "he realized that police would be responding and he didn't want to get arrested."

The defendant sought to introduce the first and third statements as statements against penal interest to prove that Francois had a gun and was the first aggressor. The Commonwealth agreed that those statements were admissible, but argued that all three of the statements should be admitted under the doctrine of verbal completeness. See Commonwealth v. Crayton, 470 Mass. 228, 247 (2014).[7]

Although both parties agreed that at least some of Francois's statements were admissible, the trial judge concluded that they were not relevant unless the defendant could provide more evidence that Francois was the first to draw his gun, or that the defendant was aware Francois had a gun. After the close of the Commonwealth's case, the defendant testified to the events inside the car, including that Francois had threatened him with the gun. Thereafter, all three of Francois's

---

[7] The defendant sought to exclude the second statement, which undermined the claim that Francois drew his gun first, arguing that it was not against penal interest.

statements regarding his gun were admitted through the State police trooper who had conducted the interview.[8]  The defendant argues that the judge's ruling was error and, as a result, he was forced to testify in violation of his right against self-incrimination.

We agree with the defendant that Francois's statements were relevant regardless of the defendant's testimony.

> "The relevance threshold for the admission of evidence is low.  Evidence is relevant if it has a rational tendency to prove an issue in the case, or render a desired inference more probable than it would be [otherwise].  It need not establish directly the proposition sought; it must only provide a link in the chain of proof" (quotations and citations omitted).

Commonwealth v. Arroyo, 442 Mass. 135, 144 (2004).  See Mass. G. Evid. § 401 (2018) ("Evidence is relevant if [a] it has any tendency to make a fact more or less probable than it would be without the evidence and [b] the fact is of consequence in determining the action").  Francois's admission that he was

---

[8] The judge earlier had ruled that if the statements were admitted in evidence at all, they would be admitted together. This was appropriate.  An otherwise inadmissible hearsay statement may be admitted under the doctrine of verbal completeness if the additional statement is "(1) on the same subject as the admitted statement; (2) part of the same conversation as the admitted statement; and (3) necessary to the understanding of the admitted statement" (citation omitted). Crayton, 470 Mass. at 247.  As the judge noted in his written decision on the defendant's motion in limine, "the statements of Francois regarding his possession of a firearm cannot be fairly understood without consideration of the contextualizing fact that he only retrieved the weapon from his pocket after he was shot."

carrying a gun during the shooting increased the possibility that he threatened the defendant with it, which would establish one of the predicates for self-defense. See Commonwealth v. Glass, 401 Mass. 799, 808 (1988) (evidence of overt assault or threat against defendant placing him in "actual and reasonable apprehension of grievous bodily harm or death" required to raise self-defense). Thus, the statements were relevant, and it was error to exclude them in the first instance.

Furthermore, that error prejudiced the defendant. A preserved evidentiary error is prejudicial if "there is a reasonable possibility that [it] might have contributed to the jury's verdict" (quotation omitted). Crayton, 470 Mass. at 253. Here, "it is impossible to conclude that [the defendant's] substantial rights were not affected" (quotation omitted). Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994). We do not predict "what a reasonable jury might have done if the errors had never happened," Crayton, supra, but instead ask whether we can be fairly assured "that the judgment was not substantially swayed by the error," Flebotte, supra.

Francois's statements were the only direct evidence in the Commonwealth's case that bore on the central issue at trial: the defendant's motivation for shooting the victims. That is, they established that Francois possessed a loaded gun in the moments leading up to the fatal confrontation, and that he

attempted to dispose of the gun to conceal it from law enforcement, suggesting consciousness of his own guilt. Although the evidence did not exculpate the defendant,[9] it provided support for an inference that the defendant acted in self-defense.

We are mindful that the contested evidence ultimately did come before the jury. However, the trial judge's early ruling excluding Francois's statements inevitably influenced the critical choices the defendant made in mounting his own defense. At the least, the error influenced the defendant's evaluation of the costs and benefits of putting on an affirmative case and testifying on his own behalf.[10] Cf. Brooks v. Tennessee, 406

---

[9] Francois's statement that he retrieved his gun after he had been shot undermines the defendant's theory of self-defense. However, the defendant was free to argue that the statement was self-serving, as he did in closing.

[10] The defendant contends that the trial judge's error compelled him to testify, thereby violating his constitutional right to remain silent. Ordinarily, the fact that a defendant is "forced to testify . . . in an effort to reduce the risk of conviction" does not compel his testimony. Williams v. Florida, 399 U.S. 78, 83-84 (1970). An error in admitting evidence may contribute to that imperative, but it does not by itself make the choice involuntary. See Commonwealth v. Davis, 403 Mass. 575, 581 (1988) (statement is voluntary if it is "the product of a rational intellect and a free will, and a meaningful act of volition" [quotations and citations omitted]).

We nonetheless observe that the trial judge's evidentiary error inevitably affected the defendant's substantial rights. See Flebotte, 417 Mass. at 353. We therefore cannot say that his choice to testify was entirely "unfettered." Commonwealth

U.S. 605, 610-611 (1972) (rule requiring defendant to be his own first witness if testifying "burden[s] [his] otherwise unconditional right not to take the stand" by denying him "realistic[] assess[ment]" of value of his testimony); Commonwealth v. Yasin, 483 Mass. 343, 352 (2019) (judge's erroneous decision to defer ruling on dispositive motion undisputably prejudiced defendant's ensuing strategic decisions). By preventing the statements from coming in during the government's case-in-chief, the trial judge improperly excluded relevant evidence key to the defense. Thus, because the trial judge's error shaped the entire proceeding, we cannot fairly conclude that it had "but very slight effect" on the judgment or on the defendant's substantial rights. Flebotte, 417 Mass. at 353. The trial judge's error prejudiced the defendant, and he is entitled to a new trial on his convictions of murder in the first degree as to Cator and assault with attempt to kill as to Francois.[11]

---

v. Kleciak, 350 Mass. 679, 685 (1966), quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964). The burden on that choice -- while not precisely a constitutional error -- certainly contributes to our conclusion that the trial judge's error prejudiced the defendant.

[11] Deciding the case as we do, we need not reach the remainder of the defendant's claims. See Commonwealth v. Crowder, 495 Mass. 552, 572, cert. denied, 146 S. Ct. 169 (2025) ("[I]t may be completely unnecessary to decide such questions,

Conclusion.  For the reasons stated, the judgments of the defendant's convictions of murder in the first degree and assault with attempt to kill are vacated and remanded for a new trial.  We also vacate the judgments of the defendant's convictions of unlawful possession of a firearm and unlawful possession of a loaded firearm, set aside those verdicts, and remand for further proceedings consistent with Commonwealth v. Guardado, 493 Mass. 1, 12 (2023).

So ordered.

---

as we do not know if or how they may present themselves at a new trial").